IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN C. WARNER

                Plaintiff,

vs.                                Case No. 16-4143-SAC-KGS

SHERRY (SHERI) FLOYD, et al.,

                Defendants.

**MEMORANDUM AND ORDER**

This is a medical malpractice action which is before the court upon motions for summary judgment filed on behalf of defendant Sheri Floyd and defendants Sisters of Charity of Leavenworth Health System and St. Francis Health Center. Doc. Nos. 190 and 193. Plaintiff is proceeding pro se.

I. Summary judgment and pro se standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The local rules of this court provide that a supporting memorandum for a summary judgment motion must contain "a concise statement of material facts as to which the movant contends no genuine issue exists." D.Kan. Rule 56.1(a). The local rules further provide that: "[a] memorandum in opposition to the motion for summary judgment must begin with a section

1

containing a statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." D.Kan. Rule 56.1(b)(1). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D.Kan. Rule 56.1(a). Plaintiff received notice of the provisions of Fed.R.Civ.P. 56 and D.Kan. Rule 56.1 when defendants filed their motions for summary judgment. Doc. Nos. 192 and 195. Of course, pro se litigants must follows the rules of procedure, including the local rules. Elrod v. Swanson, 478 F.Supp.2d 1252, 1268-69 (D.Kan. 2007); Keehner v. Dunn, 409 F.Supp.2d 1266, 1270 (D.Kan. 2005). A "[p]laintiff's pro se status, in and of itself, does not prevent this Court from granting summary judgment." Elrod, 478 F.Supp.2d at 1269; see also, Keehner, 409 F.Supp.2d at 1270.

II. Plaintiff's contentions

Plaintiff suffered a dog bite to his left thumb. The parties allege that plaintiff was treated by defendant Floyd on February 7, 2015 for this injury. See Final Pretrial Order, Doc. No. 186, pp. 4-5. According to plaintiff's response to the motions for summary judgment, plaintiff's "legal position [is]

2

that the negligence of defendant Floyd caused Plaintiff life threatening harm by not providing [a] required discharge summary for Plaintiff to sign and take home upon discharge on 2/7/2015." Doc. No. 198, p. 4.  According to the final pretrial order, plaintiff further contends: that he refused consent to defendant Floyd to suture his wound; that Floyd's failure to anesthetize the wound caused plaintiff trauma; that there was a failure to evaluate plaintiff's diagnosis after six weeks of antibiotics; and that defendants failed to report complaints about plaintiff's care to state and federal agencies.  Doc. No. 186, pp. 4-5.

III. Uncontroverted facts

Plaintiff has not specifically controverted the lists of uncontroverted facts defendants have presented with their summary judgment motions.  After reviewing the motions and the support materials, the court finds that the following facts are uncontroverted.  On February 7, 2015, plaintiff sought care at the Brewster ReadyCare Clinic, a St. Francis Physician Clinic, for a dog bite on his left thumb.  Defendant Sheri Floyd, a physician's assistant, provided care to plaintiff.  Floyd discussed the risks, benefits and limitations of loosely suturing the lacerations on plaintiff's thumb and plaintiff agreed to that procedure.  The thumb wounds were cleansed and a local anesthetic was administered prior to suturing.  Plaintiff

3

complained of pain during the suturing process. The suturing was stopped and an additional amount of anesthetic was administered. After the suturing continued, plaintiff asked that it stop. Floyd tied off the sixth suture and used steri strips to finish closing the lacerations. Floyd explained the importance of a thorough examination of the wounds and the importance of cleaning the wounds. The progress notes of the visit (Doc. No. 191-2, p.2) indicate that a "wound handout" was given to plaintiff. Further, plaintiff was informed to keep the wound clean and dry, to apply antibiotic ointment daily, to notify the clinic if he noticed signs of infection, and to return in 7 days for the removal of the sutures. Id. A treatment plan was established which included pain medication and antibiotics. A prescription by Floyd for antibiotics was transmitted to a pharmacy.

On February 17, 2015, staff at the St. Francis Physician Clinic called plaintiff to check on his status. Plaintiff complained of unbearable pain and discoloration in his left hand. He requested a refill of his antibiotics prescription and said he was out of pain medication. Plaintiff was advised that he needed to be seen by a health care provider. Plaintiff went to Brewster ReadyCare Clinic where he was assessed and referred to the emergency room at St. Francis Health Center.

4

At the emergency room, a physician's assistant, Shari LeFever, observed that the left thumb had become infected. Plaintiff was continued on antibiotics and pain medication, and he was told to follow up with his primary care doctor in two to three days.

On February 26, 2015, plaintiff visited Brewster ReadyCare Clinic to recheck the dog bite. He was seen by defendant Floyd in conjunction with Dr. Michael McClintick. The wound appeared well-healed, but there was some tenderness to the touch. A change in antibiotics was prescribed and plaintiff was referred to another clinic for evaluation and treatment of his thumb.

On March 11, 2015, plaintiff reported to the St. Francis Health Center emergency department to recheck his left thumb. It was reported that there was: some mild swelling; no streaking; minimal warmth; and decreased sensation and range of motion because of swelling. Plaintiff was told to continue antibiotics until he was seen by a hand specialist and to elevate his thumb and use it as tolerated.

On April 1, 2015, plaintiff was seen again at Brewster ReadyCare Clinic. Plaintiff was told to keep the wounded area clean and dry, finish all antibiotics, and to follow up with his primary care doctor if his symptoms did not improve. Plaintiff was referred to an infectious disease specialist.

On April 3, 2015, plaintiff visited the St. Francis Health Center emergency department with complaints of a left thumb infection. A MRI was conducted which provided some indications of osteomyelitis. An orthopedic physician recommended IV antibiotics for 3-6 weeks. Plaintiff was also offered a hospital admission for an infectious disease consult, but plaintiff refused.

On April 6, 2015, plaintiff saw Dr. Michael Tablang at Mission Woods Clinic, a St. Francis Physician Clinic. Dr. Tablang observed some swelling and tenderness. He ordered IV antibiotics for at least six weeks. This was started the next day, April 7. Also on April 7, plaintiff saw defendant Floyd for blood pressure and pain medications. She advised plaintiff to continue IV therapy and the keep all scheduled appointments.

On May 8, 2015, plaintiff was again seen by Dr. Tablang. No tenderness or erythema was observed and there was full range of motion in plaintiff's left thumb. Approximately one year later plaintiff was diagnosed with bilateral carpal tunnel syndrome and left thumb arthritis at a clinic in Arizona.

Defendant Floyd has been an employee of defendant St. Francis. She has never been an employee of defendant Sisters of Charity. Defendant St. Francis is a health care provider qualified for coverage under the Kansas Health Care

6

Stabilization Fund. Defendant Floyd is a health care provider and is also qualified for coverage under the Fund.

## IV. Medical malpractice standards

Plaintiff is bringing Kansas state law claims of medical practice which this court may properly consider under the diversity jurisdiction provisions of 28 U.S.C. § 1332.

To recover upon a claim of medical malpractice, plaintiff has the burden of proving the same elements required in any negligence action. Treaster v. HealthSouth Corp., 442 F.Supp.2d 1171, 1179 (D.Kan. 2006); Sharples v. Roberts, 816 P.2d 390, 397 (Kan. 1991). These elements are: 1) that defendant owed plaintiff a duty of care; 2) that plaintiff violated that duty of care by failing to exercise reasonable care, in other words, committing negligence; and 3) that defendant's negligence caused plaintiff an injury. See Treaster, 442 F.Supp.2d at 1179-80; Rios v. Bigler, 847 F.Supp. 1538, 1542 (D.Kan. 1994); Sharples, 816 P.2d at 395 & 397. "Negligence is never presumed and may not be inferred merely from a lack of success or an adverse result from treatment." Rios, 847 F.Supp. at 1542. Expert testimony generally is required in medical malpractices cases to establish whether there was a breach in the standard of care and to prove causation. Treaster, 442 F.Supp.2d at 1180; Sharples, 816 P.2d at 395 and 397-98. "An exception arises where the lack of reasonable care or the existence of causation is apparent to

the average layperson from common knowledge or experience." Treaster, 442 F.Supp.2d at 1180.

## V. Defendants Floyd, St. Francis and Sisters of Charity are entitled to judgment as a matter of law.

Plaintiff's position in his response to the summary judgment motions is that defendant Floyd was negligent because she did not provide a required discharge summary for plaintiff to sign and take home when he was discharged on February 7, 2015. He has also made assertions in the final pretrial order regarding the suturing process, anesthesia, plaintiff's evaluation after six weeks of antibiotics and the failure of defendants to report complaints about plaintiff's care to state and federal agencies.

Plaintiff has not timely designated an expert witness and the court has barred plaintiff from using an expert witness at trial. Doc. No. 182. Plaintiff also has not presented evidence to dispute the expert opinion presented by defendant Floyd. This opinion from Dr. Randall McAllister is that defendant Floyd's care was within the standards of care and did not cause or contribute to the plaintiff's osteomyelitis. Doc. No. 191-8.

It is clear from the record that plaintiff cannot present the expert testimony necessary to show that defendant Floyd was negligent or that defendant Floyd's care caused an injury or

8

damages to plaintiff.  Plaintiff argues that the doctrine of res ipsa loquitur applies in this situation.

The doctrines of "common knowledge" and "res ipsa loquitur" are applied infrequently and are limited to situations in which it would be apparent to a layperson that an injury or an outcome would not have occurred if due care had been exercised.[1]  Hubbard v. Mellion, 302 P.3d 1084, 1092 (Kan.App. 2013); see also, Palmer v. Shawnee Mission Medical Center, Inc., 2017 WL 5629624 *8-9 (D.Kan. 11/22/2017)(discussing res ipsa loquitur); Tarantola v. Cushing Memorial Hosp., 2012 WL 5877532 *3 (D.Kan. 11/20/2012)(discussing common knowledge exception).  Neither doctrine applies to the facts of this case.  For the common knowledge exception to apply, the care or the result of the care must be patently bad and a person without pertinent knowledge must be able to assess the wrongfulness of the treatment and attribute the plaintiff's injury to the wrongful treatment without the assistance of expert testimony.  Hubbard, 302 P.3d at 1093; Tarantola, at *3.  Here, defendant Floyd's alleged care, including the alleged failure to provide a discharge summary, may not reasonably be characterized as patently bad.  Nor may the alleged result (osteomyelitis) be attributed to defendant Floyd's care without the assistance of expert

---

[1] Although plaintiff does not argue the "common knowledge" exception, the court discusses it here because it is related to "res ipsa loquitur" and because defendants have raised the issue.

testimony. It is not a matter of common knowledge. Cf., Tarantola, at *4 (whether stapling wound resulted in additional scarring is not a matter of common knowledge).

For res ipsa loquitur to apply, the defendant must have the thing or instrumentality which caused injury or damage to the plaintiff in the defendant's exclusive control. Hubbard, 302 P.3d at 1094. Also, the occurrence must be of such kind or nature as ordinarily does not occur in the absence of negligence. Id. Here, defendants did not have exclusive control over the agents which impacted the healing of plaintiff's left thumb. Nor is plaintiff's thumb infection something which occurs ordinarily only because of negligence. See Palmer, at *9 (dismissing res ipsa loquitur claim where lay persons would not possess knowledge and experience to know whether negligent care was provided where plaintiff was discharged from hospital for false labor pains and less than two hours later gave birth at her home).

For these reasons, defendants have demonstrated that plaintiff could not prove negligence or causation at trial without expert witness testimony. No reasonable jury on this record could find that plaintiff's osteomyelitis was something which occurred because of defendants' negligence.

Defendant Sisters of Charity and defendant St. Francis are also entitled to summary judgment against any claim deriving

10

from defendant Floyd's actions or omissions for other legal reasons. Defendant Sisters of Charity is not vicariously liable for defendant Floyd's actions or omissions because it did not employ defendant Floyd and owed no duty of care to plaintiff. Defendant St. Francis is entitled to summary judgment against any vicarious liability claims under the provisions of K.S.A. 40-3403(h). This statute bars vicarious liability in a medical malpractice case where the employer and the care provider are both qualified for coverage under the Kansas Health Care Stabilization Fund. See Cady v. Schroll, 317 P.3d 90, 93-94 (Kan. 2014).

Finally, these defendants are entitled to summary judgment against any claim alleging that they failed to make a report to federal or state agencies because plaintiff has not alleged that he suffered any damages caused by a failure to report.

## VI. The Court declines to order a screening panel.

At the conclusion to plaintiff's response to the summary judgment motions, plaintiff requests a medical malpractice screening panel pursuant to K.S.A. 65-4901. Pursuant to Kansas Supreme Court Rule 142(c), a request for such a screening panel must be made no later than 60 days after a defendant subject to the panel is served with process. This court has applied that time limit in other cases. See Cox v. Ann, 2014 WL 1011679 *2 (D.Kan. 3/14/2014); Ellibee v. Chappas, 2006 WL 1192941 *3

(D.Kan. 5/3/2006)(applying the time limit to a request for a legal malpractice screening panel under K.S.A. 60-3502). Plaintiff's request is untimely. Therefore, it shall be denied.

VII. Conclusion

For the above-stated reasons, defendants' motions for summary judgment (Doc. Nos. 190 and 193) shall be granted.

**IT IS SO ORDERED.**

Dated this 7th day of February, 2018, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge